**Ralph STONE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00014–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 5, 1988.

Catherine Greene Burnett, Morrow & Burnett, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Kathy Giannaula, Asst. Dist. Atty., for appellee.

Before EVANS, C.J., and DUNN and SAM BASS, JJ.

## OPINION ON REHEARING

SAM BASS, Justice.

We withdraw our opinion of February 25, 1988, and replace it with this opinion. In so doing, we overrule the State's motion for rehearing; however, we take the State's motion as an opportunity to supplement the reasoning of our earlier opinion.

Appellant pleaded not guilty to a charge of murder but was found guilty by the jury. The trial court assessed punishment at 10 years confinement. We reverse and remand.

Appellant does not contest the sufficiency of the evidence.

In his first point of error, appellant argues that he was denied effective assistance of counsel because his counsel erroneously informed him that if the trial court were to assess punishment, it could grant him probation. Tex.Code Crim.P.Ann. art. 42.12, sec. 3g(a)(2) (Vernon Supp.1988) provides that a defendant is not eligible for probation:

when it is shown that the defendant used or exhibited a deadly weapon ... during the commission of a felony offense....

Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense ... the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment.

Appellant argues that because his indictment charged him with committing murder with a firearm, a deadly weapon *per se* (*see Stewart v. State*, 532 S.W.2d 349 (Tex. Crim.App.1976)), the court could not have granted him probation, and that had he known this, he would have requested that the jury assess punishment.

The law on the right to counsel is the same under the United States and Texas Constitutions. U.S. Const. amend. VI; Tex. Const. art. I, sec. 10; *see Hernandez v. State*, 726 S.W.2d 53, 55–56 (Tex.Crim. App.1986). The general standard of review is stated in *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App.1980). *Ferguson v. State*, 639 S.W.2d 307, 310 (Tex.Crim.App. 1982).

The recent case of *Ex parte Cruz*, 739 S.W.2d 53, 57–58 (Tex.Crim.App. 1987), distinguished the appropriate usage of the standard in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), from that in *Ex parte Duffy*, 607 S.W.2d at 516. In *Cruz*, cases are divided into two groups: (1) those in which the alleged ineffective assistance of counsel took place during the punishment phase of a capital murder trial, in which event *Strickland* applies; and, (2) those in which the alleged ineffective assistance took place during the punishment phase of an ordinary trial, in which case *Duffy* applies.

The Court of Criminal Appeals has commented that "the threshold standard for determining effective assistance of counsel enunciated in *Strickland* is not substantively different from the standard this Court has propounded in recent years." *Hernandez v. State*, 726 S.W.2d at 55. We hold that appellant has established a claim of ineffective assistance under either standard.

The Court of Criminal Appeals has interpreted *Duffy* as follows:

Under this standard the sufficiency of an attorney's assistance is gauged by the totality of the representation of the accused. This constitutional right to counsel does not mean errorless counsel or counsel whose competency is to be judged by hindsight. The right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance of counsel.

*Ex parte Cruz*, 739 S.W.2d at 48. Thus, the determination of "effective assistance of counsel" questions turns on the particular circumstances of each case. *Mercado v. State*, 615 S.W.2d 225, 227 (Tex.Crim. App.1981).

Texas case law interpreting *Duffy* has required, in addition to a showing of some act that would constitute ineffective assistance of counsel, a showing of harm due to the alleged ineffective assistance. *See, e.g., Mercado v. State*, 615 S.W.2d at 228; *Ferguson v. State*, 639 S.W.2d at 311.

Appellant pleaded not guilty to a charge of murder and claimed his actions were in self-defense. Appellant testified that he saw Rose, the victim, standing at the end of a dark hallway with a "shiny object" in his hand. Appellant maintained he shot Rose because he thought Rose intended to attack him. The evidence indicates that Rose had a metallic lighter in his possession at the time of his death (the lighter was found in a pool of blood next to his body). The evidence also reflects that the decedent had a history of threatening to kill various people. Nevertheless, the jury found appellant guilty. After the jury trial, at the beginning of the sentencing hearing, the trial court received evidence on appellant's ineffective assistance claim.

Appellant's counsel testified that before the guilt-innocence stage of the trial, appellant elected to have the court assess punishment if the jury found him guilty. The record reflects that, acting upon this advice, appellant filed a motion for probation. At some point after the jury's verdict of

guilty but before the punishment stage, appellant's counsel stated that he "remembered" that the trial court could not grant probation because of the prohibition in art. 42.12, sec. 3g(a)(2). Appellant's counsel testified further that appellant relied on his recommendation to forego sentencing by the jury.

Appellant testified that he would not have elected to have punishment assessed by the court if he had known that he was ineligible for probation from the court, and that he had a wife of eight years and had held custody of his daughter for 10 to 12 years. His employment history was developed during the case-in-chief.

■ We recognize that the right to a jury trial on punishment is significant and valuable. *Trevino v. State,* 577 S.W.2d 242, 243 (Tex.Crim.App.1979) (quoted with approval in *Thompson v. State,* 604 S.W.2d 180, 182 (Tex.Crim.App.1980)); *Snow v. State,* 697 S.W.2d 663, 665 (Tex.App.— Houston [1st Dist.] 1985, no pet.). We hold that appellant has established an act that constitutes ineffective assistance and, therefore, has satisfied the first element of the *Duffy* test. *See supra.* We have held that failure to request a jury instruction on probation at the punishment stage of a trial is ineffective assistance. *Snow v. State,* 697 S.W.2d at 665. By the same token, advising a defendant incorrectly that the court will be able to grant probation when it assesses punishment, is ineffective assistance.

The mere fact that appellant has established an act constituting ineffective assistance, however, is insufficient to require reversal. The second element of the *Duffy* test requires that appellant establish, by a preponderance of the evidence, that he suffered harm as a result of the ineffective assistance. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985); *Mercado v. State,* 615 S.W.2d at 228.

■ Appellant argues that he suffered harm, analogizing his situation to those presented in cases that have held that if an appellant bases his plea of guilty on erroneous adivce, he is entitled to withdraw his plea. *See, e.g., Ex parte Huerta,* 692 S.W. 2d 681, 682 (Tex.Crim.App.1985); *Ex parte Burton,* 623 S.W.2d 418, 419 (Tex.Crim. App.1981). A plea of *guilty,* however, involves the affirmative waiver of *constitutional* rights, such as the right to a jury trial; constitutional rights can be waived only by a showing that the plea was knowing and voluntary. *Samudio v. State,* 648 S.W.2d 312, 314–25 (Tex.Crim.App.1983) (op. on reh'g).

■ The United States and Texas Constitutions, however, do not encompass the right to have a jury assess a defendant's punishment. U.S. Const. amend. VI; Tex. Const. art. I, sec. 10; *Tinney v. State,* 578 S.W.2d 137, 138 (Tex.Crim.App.1979). Because appellant pleaded *not guilty,* the State was not required to establish that appellant *voluntarily* waived a jury trial on punishment. Therefore, the cases appellant offers as support for this specific argument are inapposite.

Nevertheless, we hold that appellant's claim of harm has merit. In *Snow v. State,* 697 S.W.2d at 666, we addressed a similar claim of harm. We stated that for an error based on ineffective assistance of counsel to require relief, "there must be a reasonable probability, that is, a probability sufficient to undermine confidence in the trial's outcome, that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Our examination of the record convinces us that there is a probability sufficient to undermine our confidence in the punishment verdict that, but for counsel's error, the verdict would have been different. This was a hotly contested trial that generated a record of over 400 pages at the guilt stage. Every witness familiar with the decedent testified about his reputation for violence. During deliberation of the guilt-innocence verdict, the jury twice requested that copies of these very witnesses' testimony be produced for its consideration. The trial court, who sat through the guilt-innocence stage, gave appellant a relatively limited sentence of 10 years—a sentence within the range that the law allows to be probated. On these facts, and in light of

the importance of the right at issue, we conclude that there is a reasonable probability that, had the appellant been told that the trial court could not grant him probation, the outcome of the punishment stage of the trial would have altered because of the reasonable probability that he would have sought and received probation, or a lesser sentence, from the jury. *See Snow v. State*, 697 S.W.2d at 668 ("[t]he right to be considered for probation is valuable, even if probation is not given, because the jury instruction concerning probation forcefully directs the jury's attention to the lowest punishment allowed by law"). In short, there is a reasonable probability that this error affected the outcome of the trial to appellant's prejudice.

The State argues in its motion for rehearing that our opinion effectively holds "that trial counsel's act was per se ineffective assistance of counsel." This is incorrect. As we specifically stated above, "*[o]n these facts*, and in light of the importance of the right at issue, we conclude that there is a *reasonable probability* that ..." trial counsel's ineffective assistance harmed appellant.

The State also argues that our holding is "incongruous with the facts reflected in the record." This is incorrect. The record reflects that appellant's decision to have the judge assess punishment was predicated on the assumption that the judge could grant him probation. Indeed, the record further reflects that appellant filed a motion for probation; *this indicates that both appellant and his counsel believed probation to be permissible and possible outcome.*

Finally, the State argues on rehearing that the instant case is controlled by *Ex parte Cruz*, 739 S.W.2d at 53. In order to understand why *Cruz* does not apply in the instant case, we must detail the facts of *Cruz* and contrast them to those of the instant case.

In *Cruz*, the defendant was convicted of involuntary manslaughter. The trial judge assessed punishment at five years confinement. The defendant contended on appeal that he was deprived effective assistance of counsel because, *inter alia*, he was advised

incorrectly about his eligibility for probation. He claimed that he elected to have the trial court assess punishment in reliance upon his attorney's advice that the court could grant probation when, in fact, Tex.Code Crim.P.Ann. art. 42.12, sec. 3g(a)(2) rendered the defendant ineligible for probation. In the instant case, as in *Cruz*, appellant argues that he was advised incorrectly about his eligibility for probation and that he acted in reliance upon his attorney's advice.

In *Cruz*, the trial court conducted an evidentiary hearing, during which both the trial judge and the defendant's counsel testified. As a contrast to *Cruz*, the State asserts in the instant case that no hearing occurred in the trial court below. This is incorrect. The record reflects that, at the beginning of the sentencing hearing, both appellant and his attorney testified to the trial court about appellant's ineffective assistance claim. Despite the fact that neither party, nor the court, announced, "A hearing on the issue of ineffective assistance of counsel is now taking place," this is, in fact, what occurred.

In *Cruz*, the defendant's attorney testified that it was his trial strategy to try the punishment stage to the court and, because the victim was a small child, that he would have done so even had he known that the judge could not grant probation. The trial judge testified that he would not have granted Cruz probation even if he could have done so.

At the hearing in the instant case, appellant's attorney testified that he would have advised his client to try the punishment stage to the jury had he known that the court could not grant probation. Appellant testified that he relied upon this advice. The trial judge below, unlike that in *Cruz*, did not testify about whether he would have granted probation had he possessed the authority to do so.

Finally, in *Cruz*, the defendant was charged with recklessly killing the victim with a *gun*, and the trial court entered no affirmative finding of a deadly weapon. In the instant case, appellant was charged with murder by *firearm*—a deadly weapon

*per se. Stewart v. State*, 532 S.W.2d 349, 350 (Tex.Crim.App.1976). The jury found appellant guilty as charged in the indictment. The jury, therefore, made an affirmative finding of use of a deadly weapon as a matter of law. *Polk v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App.1985). Thus, unlike the situation in *Cruz*, in the instant case, from the moment that the State indicted appellant, there existed a substantial likelihood that a trial court would be unable to grant him probation. *See Rodriguez v. State*, 691 S.W.2d 77, 80 (Tex.App.—Houston [1st Dist.] 1985, pet ref'd); *Short v. State*, 681 S.W.2d 652, 655 (Tex.App.—Houston [14th Dist.] 1984, pet ref'd).

The State argues that there is "nothing in the record to affirmatively show that the trial court would have granted the appellant probation *but for* the affirmative finding." (Emphasis added.) This misstates the burden appellant carries. As stated *supra*, appellant must show that there is a "reasonable probability, that is, *a probability sufficient to undermine confidence in the trial's outcome, that, but for counsel's unprofessional errors, the result of the proceeding would have been different."* (Emphasis added.)

■ In other words, appellant's burden is not to show that he would have received probation but for the error; instead, appellant's burden is to establish that there is a reasonable probability that the result of the proceeding would have been different but for the error. This is an important distinction. Appellant's burden is not "beyond reasonable doubt," but "by a preponderance." *Moore v. State*, 694 S.W.2d at 531.

We sustain appellant's first point of error.

In his second point of error, appellant argues that the trial court improperly limited evidence of complainant's history of threatening behavior, contending that the evidence was admissible and relevant because, first, it tended to show his state of mind and supported his claim of self-defense; and second, it tended to show that

the victim was engaging in aggressive conduct.

The evidence in question came before the jury in the form of testimony by Gordon, who testified that he had been threatened by the victim on one occasion and had told the appellant about the incident. Gordon also testified about a violent altercation between the victim and a person named Mayfield. The trial court sustained the prosecution's objection that this evidence was inadmissible because appellant was not a witness to either of the incidents.

■ When a defendant raises the issue of self-defense, evidence of the victim's reputation for violence, as well as evidence of prior specific acts of violence, is relevant to show that the defendant reasonably believed that force was necessary to protect himself. *Thompson v. State*, 659 S.W.2d 649, 653–55 (Tex.Crim.App.1983). The defendant need not have been present to witness, nor even have been aware of, an act of violence if evidence of such is offered to demonstrate the likelihood that the victim was the aggressor. *Id.* Furthermore, the defendant need not have been present to witness an act of violence in order for evidence of that act to be admissible about his state of mind; the defendant must only have been aware of past aggressive conduct by the victim in order for evidence of such conduct to be admissible about his state of mind. *Id.* The trial court's erred in its reasoning when it excluded the evidence.

■ The fact that the trial court ascribed an erroneous rationale to its exclusion of evidence, however, does not mandate reversal. Usually, if the trial court's action is correct, although a wrong or insufficient reason is given, no reversal will follow, and this is especially true regarding admission of evidence. *Dugard v. State*, 688 S.W.2d 524, 530 (Tex.Crim.App.1985). In order for evidence of prior acts of violence to be admissible on the issues of whether the victim was the aggressor and/or of the defendant's state of mind, a defendant must lay a predicate in the form of evidence of some act of aggression by the victim. *Thompson v. State*, 659 S.W.

2d at 653–54; *Kolar v. State,* 705 S.W.2d 794, 798 (Tex.App.—Houston [1st Dist.] 1986, no pet.). At the time Gordon testified, appellant had presented no evidence that he feared for his life when he killed the victim.

Furthermore, although the trial court sustained the State's objection, the State failed to object to the preceding testimony, which was in the same vein. Thus, even if the trial court had erred in its ruling, the evidence *was* before the jury. Appellant cannot show reversible error if the import of the excluded testimony was conveyed to the jury. *Easterling v. State,* 710 S.W.2d 569, 574 (Tex.Crim.App.1986); *Johnson v. State,* 583 S.W.2d 399, 404 (Tex.Crim.App. 1979). Therefore, the trial court did not err in excluding the evidence.

Appellant's second point of error is overruled.

■ In his third point of error, appellant argues that the prosecutor's reference to the effect of the appellate process on the finality of the jury's verdict constituted reversible error. In argument at the guilt-innocence stage, the prosecutor stated to the jury:

> if you find Ralph Stone not guilty, James Rose's death will go forever unanswered for. But there's a reason that the court reporter is taking down everything I say and there's a reason that the court reporter has been here throughout the trial and that he recorded everything through voir dire, through the testimony: because when and if you find this man not guilty [sic], the case gets appealed.

Appellant preserved error by objecting (to which the trial court responded by sustaining his objection), requesting a limiting instruction (to which the trial court responded by so instructing the jury), and moving for mistrial (to which the trial court responded by denying his motion). *Brooks v. State,* 642 S.W.2d 791, 798 (Tex.Crim.App. 1982).

The argument of which appellant complains was improper because it was not within the four permissible areas of jury argument: (1) summation of the evidence; (2) reasonable deductions from the evi-

dence; (3) answer to argument of opposing counsel; and, (4) plea for law enforcement. *Landry v. State,* 706 S.W.2d 105, 111 (Tex. Crim.App.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986); *Borgen v. State,* 682 S.W.2d 620, 623 (Tex.App. —Houston [1st Dist.] 1984, no pet.).

■ Generally, an instruction by the trial court ordering the jury to disregard improper argument will cure error; it is only when a statement to the jury is so inflammatory that its prejudicial effect cannot reasonably be cured by an instruction to disregard that reversible error will result. *Logan v. State,* 698 S.W.2d 680, 682 (Tex.Crim.App.1985). In order to satisfy this requirement, the argument must be extreme, manifestly improper, inject new and harmful facts into the case, or violate a mandatory statutory provision. *Id.* Whether an argument is harmful enough to warrant reversal is ultimately determined on the basis of its probable effect on the minds of the jurors. *Id.*

■ The error made by the prosecutor was manifestly improper, and was calculated to give, and probably did give, the impression to the jury that if it made a mistake in convicting appellant, a higher court would correct the error. Rule 81(b)(2), Tex. R.App.P., states that if the appellate record in a criminal case reflects error, the appellate court shall reverse unless it can determine "beyond a reasonable doubt" that the error made no contribution to the conviction or the punishment. Given the strong evidence in appellant's defense, and the jury's extensive deliberation, we cannot say that this improper argument by the prosecutor did not contribute to appellant's conviction beyond reasonable doubt.

Although an appellate court may consider the fact that isolated sentences, taken out of context, may take on a meaning different than that understood by the jury, *Henson v. State,* 683 S.W.2d 702, 704 (Tex. Crim.App.1984), the fact remains that the prosecutor essentially informed the jury that if they found appellant not guilty, no appeal could be had by the State, but that if they found appellant guilty, because

there remained the possibility of an appeal, a higher court could correct any error in the judgment below.

Appellant's third point of error is sustained.

 In his fourth point of error, appellant argues that the trial court erred in overruling appellant's objection to the charge on self-defense. Appellant's objection was that the charge did not explicitly place the burden of proof on the State to disprove the defense of self-defense. Because appellant objected to the charge, we are required to reverse if the charge is in error and some harm results to appellant. *Almanza v. State,* 686 S.W.2d 157, 159 (Tex.Crim.App.1984).

*Luck v. State,* 588 S.W.2d 371, 375 (Tex. Crim.App.1979), held that a trial court does not err in overruling a defense objection to the charge: (1) if the charge requires the jury to acquit the defendant if they believe that he was acting in self-defense or they have a reasonable doubt that he might have been; (2) if the court instructs the jury that the burden of proof—"beyond a reasonable doubt"—is on the State; and, (3) if the court instructs the jury on the presumption of innocence. The charge in the instant case satisfied these requirements.

Appellant's fourth point of error is overruled.

In his fifth and final point of error, appellant argues that the trial court did not properly enter the jury's affirmative finding of a deadly weapon in the judgment. The indictment alleged that appellant caused the victim's death by "shooting the complainant with a firearm." In its verdict, the jury found appellant "guilty of murder, as charged in the indictment." During the punishment phase of the trial, the State requested an affirmative finding of use of a deadly weapon, and the trial court agreed.

The standardized judgment form contained a section captioned "Findings on Use of Deadly Weapon." Next to that phrase, in a handwritten entry, the trial court noted, "as stated in indictment—af-firmative finding." When the trial court is the trier of fact at the punishment phase, and has heard evidence on the issue, the trial court has the authority to enter an affirmative finding about the use or exhibition of a deadly weapon. *Ex parte Webster,* 704 S.W.2d 327, 328 (Tex.Crim.App. 1986).

Appellant's reliance on *Ex parte Brooks,* 722 S.W.2d 140, 142 (Tex.Crim.App.1986), is misplaced. In that case, the Texas Department of Corrections relied on allegations in the indictment, adopted by the jury in its verdict, and found that a deadly weapon had been used. Neither the trial court, nor the jury, had entered any affirmative finding. The Texas Department of Corrections did not have the authority to act as if the trial court or the jury had done so. In the instant case, the trial court correctly entered the affirmative finding of use of a deadly weapon.

Appellant's fifth point of error is overruled.

We reverse and remand.