**Kevin Deshawn MAPPS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–93–00131–CR.

Court of Appeals of Texas,
Tyler.

May 31, 1994.

David E. Moore, Ken Gibson, Longview, for appellant.

C. Patrice Savage, Longview, for appellee.

Before RAMEY, BILL BASS and HOLCOMB, JJ.

HOLCOMB, Justice.

This appeal arises from Appellant's conviction of aggravated assault on a peace officer, operation of a motor vehicle without the owner's consent, and burglary of a motor vehicle with intent to commit theft, all of which were alleged to have arisen out of the same criminal episode. Appellant waived his right to trial by jury and upon entering a plea of guilty, was found guilty and sentenced to a term of thirty-five (35) years on the aggravated assault charge and five years on each of the other offenses, all of which were to run concurrently. We will affirm.

In a single point of error, Appellant alleges that he was denied effective assistance of counsel.

On January 27, 1993, Appellant, who at the time was seventeen years old, left his girlfriend's house around 4 a.m. claiming, as stated in his confession, that he wanted some excitement. He obtained his gun which held twenty-one shells, his gloves, a screw driver, and a head cover with holes torn in it to use as a mask. He went to an apartment complex in Henderson where he found an Oldsmobile with the door unlocked. He "popped" the steering wheel column with the screw driver to start the engine of the car. Appellant then drove to his companion Jessie Ballard's home. He woke Ballard up and asked him to come with him to look for something to rob. In Kilgore, a police car driven by Sergeant Ron England pulled behind them and turned his emergency lights on to affect a traffic stop for no tail lights. Appellant and Ballard decided to outrun the police car. Traveling at a high rate of speed, with the police car in pursuit, Appellant fired at least fifteen shots at the police car, striking it several times. Meanwhile, Sergeant England requested other units for backup. The chase took place through several streets, with Appellant and Ballard stopping once to fire at the officer. Appellant and Ballard ultimately abandoned the car and finally ended up in a culvert where they were arrested. At some point prior to the chase, Appellant had burglarized another automobile.

The record reflects that Appellant's attorney advised him in consultation with Appellant's mother, to waive a jury trial and enter a guilty plea to the judge. There was no plea bargain. It appears that the trial court conducted a procedure wherein both the State and Appellant made their recommendations in writing to the judge before entering a plea. The State recommended thirty-five (35) years confinement on the aggravated assault and ten (10) years on each of the other two third degree felony offenses. Appellant requested "boot camp and ten years probation."

After the State began introducing evidence to support the guilty plea, the court called a recess to confer with the attorneys in chambers. It appears that the court became aware of Appellant's request for probation when he applied for "boot camp," informed Appellant that probation could not be granted by the trial court in a case where a firearm was used. Then the following transpired:

THE COURT: Now, do you understand that?

THE WITNESS: Yes, sir.

THE COURT: Did you understand that when you changed your position from a jury trial to a non-jury trial?

THE WITNESS: No, sir.

THE COURT: I have to ask you at this point before I can accept your plea and continue with this case whether or not you wish to proceed non-jury on this guilty plea knowing that you have no chance under the law for probation or whether on the other hand you wish to withdraw your plea of guilty to me on this non-jury trial and *proceed to trial before a jury.*

THE WITNESS: Non-jury.

THE COURT: You know, and I'm telling absolute fact, *there is no way you are going to get probation in this case in a non-jury trial.*

THE WITNESS: Yes, sir, I understand.

THE COURT: You know for a fact after what I have seen and heard and the stipulations made I am going to make an affirmative finding that a deadly weapon was used or exhibited in this commission.

THE WITNESS: Yes, sir.

THE COURT: Anything further that you wish to put on.

MR. GIBSON: Yes, there is.

BY MR. GIBSON:

Q: Kevin, from the beginning of you and me discussing this case and discussing your defense we never intended to go to a jury. Is that correct?

A: Yes, sir.

Q: And you've talked with your mother about that and she's in the courtroom today?

A: Yes, sir.

Q: You've talked with her about a jury trial versus going to trial before the Court?

A: Yes, sir.

Q: Is she in agreement with you that you should try this case before the Court?

A: Yes, sir.

Q: So since you've been in jail since January of this year there's never been a time when you anticipated going to a jury on this matter?

A: Yes, sir.

Q: And is it your desire now and are you asking the Court for leave to amend your recommendation as to what would be an appropriate punishment in this case and do you wish to amend that recommendation to five years confinement in the Texas Department of Corrections?

A: Yes, sir, I would.

Then, later on:

THE COURT: Taken into consideration that range of punishment and the other admonishments you've been given, is it your desire to enter a plea of guilty to Count 1?

[APPELLANT]: Yes, sir.

THE COURT: Charge of aggravated assault on a peace officer.

[APPELLANT]: Yes, sir.

THE COURT: Are you doing this freely and voluntarily?

[APPELLANT]: Yes, sir.

THE COURT: You are not doing this under any elusive hope of pardon or leniency.

[APPELLANT]: No, sir.

THE COURT: Then defendant's plea of guilty at this stage in persisting in the plea of guilty non-jury and notwithstanding admonishments of the Court I am going to accept the plea at this stage and continue with the trial on the pleas of guilty non-jury.

The record shows that the trial court complied with Article 26.13 admonishments, and Appellant affirmatively stated that he understood the range of punishment and the charges against him. The admonishments were also given in writing and appeared in Appellant's plea papers. The court then proceeded to hear the balance of the State's evidence against Appellant. Appellant put on a former coach, a pastor, a friend of the family, and his mother as witnesses. Then Appellant himself took the stand. The court then passed sentence upon Appellant as set out above.

■ In a motion for new trial, Appellant testified that his trial counsel spent five to ten minutes with him at arraignment and approximately ten minutes with him at the jail on the Saturday before his trial. Appellant stated that at trial, his attorney informed him that his best chance to receive probation was to waive a jury. He maintained his attorney did not tell him that the judge could not give probation until five minutes prior to the plea. At the hearing on his motion for new trial, Appellant did not call upon his trial counsel to testify in order to establish that, in fact, his counsel had not told him that a jury could have granted probation. Appellant argues that, based on the totality of the representation, his trial counsel's performance fell below the standard of reasonableness required of a defense attorney.[1]

Appellant relies on *Ex parte Canedo*, 818 S.W.2d 814 (Tex.Cr.App.1991), to support his claim of ineffective assistance of counsel. However, the facts in *Canedo* are distinguishable from Appellant's case. In *Canedo*, a jury found Canedo guilty. Canedo's trial counsel erroneously advised him to sign a change of election on punishment, believing there was a good chance that shock probation would be assessed by the trial court since it was Canedo's first conviction. Trial counsel did not realize until after the conclusion of the trial that the trial court had no authority to grant shock probation for an aggravated

sexual assault offense. The Appellate Court held that trial counsel's advice deprived Canedo of the opportunity for the jury to assess probation, thus causing counsel's performance to fall below the standard of reasonableness required of a criminal defense attorney, based on the totality of the representation. *Id.* at 815.

In the present case, Appellant was not deprived of the opportunity for a jury to assess his punishment. The trial court gave Appellant the opportunity for a trial by jury but Appellant chose a non-jury trial, even though he knew the court could not assess probation as punishment. Appellant understood he could not receive probation in a non-jury trial.

Appellant also cites *Turner v. State*, 755 S.W.2d 207, 208–09 (Tex.App.—Houston [14th Dist.] 1988 no pet.); and *Recer v. State*, 785 S.W.2d 430, 431 (Tex.App.—Houston [14th Dist.] 1990). In *Turner*, the jury found the defendant guilty of aggravated robbery. It was clear from the record, that Turner's trial counsel thought he was eligible for probation from the court; therefore, he incorrectly advised the defendant to allow the court to set punishment. The court was prohibited from granting probation. The Fourteenth Court of Appeals held this was ineffective assistance of counsel. The Texas Court of Criminal Appeals reversed the appellate court's decision in *State v. Recer*, 815

1. There is also the possibility that his attorney's advice may not have been incorrect when he stated the trial court could have given him probation under V.A.C.C.P. art. 42.12 § 8(a), known as "boot camp." This section reads as follows:

For the purposes of this section, the jurisdiction of a court in which a sentence *requiring confinement in the institutional division of the Texas Department of Criminal Justice is imposed for conviction of a felony* shall continue for 90 days from the date on which the convicted person is received into custody by the institutional division. After the expiration of 75 days but prior to the expiration of 90 days from the date on which the convicted person is received into custody by the institutional division, the judge of the court that imposed the sentence may suspend further execution of the sentence imposed and place the person on probation under the terms and conditions of this article, if in the opinion of the judge the person would not benefit from further incarceration in a penitentiary. The court shall

clearly indicate in its order recommending the placement of the person in the alternative incarceration program that the court is not retaining jurisdiction over the person for the purposes of Section 6 of this article. A court may recommend a person for placement in the alternative incarceration program only if:
(1) the person is otherwise eligible for probation under this article;
(2) the person is 17 years of age or older but younger than 26 years and does not have a physical or mental handicap that precludes strenuous physical activity; and....

This section appears to create an exception to the limitations of the court to grant probation under Article 42.12 § 3g(a)(2) to deal with young offenders who have no prior convictions. The Appellant fell into this category. *See also Graves v. State*, 803 S.W.2d 342 (Tex.App.—Houston [14th Dist.] 1990), which discusses the circumstances under which a defendant may receive probation even though he may have used a deadly weapon.

S.W.2d 730 (Tex.Cr.App.1991). In *Recer,* the Court of Criminal Appeals held that, under the facts of the case, what appeared to have been erroneous advice could have been trial strategy.

*Canedo* and *Turner* can both be distinguished from the present case. Assuming that trial counsel here told Appellant that he had a better chance at probation with the trial judge, as opposed to a jury, because of his young age and lack of criminal record, Appellant was not harmed. Error, if any, was clearly rectified. Appellant was given an opportunity to have a jury trial and seek probation from a jury had he so desired. In none of the cases Appellant has cited (and we have found none) was the defendant given an opportunity to correct trial counsel's mistaken advice.

Appellant further contends that under *Ex parte Morse,* 591 S.W.2d 904, 905 (Tex.Cr. App.1980), the factors to be considered in determining whether counsel provided reasonably effective assistance include: (1) the amount of time spent in preparation of the defense; (2) whether the advice was given that would promote an understanding of the law in relation to the facts; (3) whether the advice was reasonably competent; and (4) whether the advice permitted an informed and conscious choice.

In *Morse,* the trial counsel's performance was clearly deficient. When Morse entered his plea of guilty, the attorney, who happened to be in the courtroom, was only appointed to sign his name on the waiver of jury trial. After this, he left the courtroom without discussing the merits of the case or any defenses the defendant may have had.

In the present case, Appellant testified that his attorney was with him only a short time prior to trial. We note, however, that the trial attorney filed an affidavit that he had spent at least nine hours on the case. The trial court approved payment for this amount of time. The trial court could have considered the record before it, the credibility of Appellant and the evidence presented, and determined that under the circumstances, Appellant had been adequately represented under the guidelines of *Morse.*

■ The standard our Court of Criminal Appeals has applied in determining whether reasonable assistance of counsel has been provided at the punishment and sentencing phase of trial is the reasonable effective assistance of counsel as required by the SIXTH AMENDMENT. *Ex parte Cruz,* 739 S.W.2d 53 (Tex.Cr.App.1987); *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980). Under this standard, the sufficiency of an attorney's assistance is gauged by the totality of the representation rendered to the accused. *Passmore v. State,* 617 S.W.2d 682 (Tex.Cr. App.1981) *(the right to effective assistance of counsel who is likely to render and who does render reasonably effective assistance).*

■ A claim of ineffective assistance of counsel can be sustained only if it is firmly grounded in the record, and it is the Appellant's responsibility to see that it is in the record. *Shepherd v. State,* 673 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1984).

■ We find that Appellant was not deprived of the opportunity to have a jury assess punishment. The trial court gave Appellant the opportunity to have a trial by jury; however, Appellant himself chose a non-jury trial even though he knew the court could not grant probation. We have examined the record as a whole and conclude that trial counsel's performance was not deficient. The evidence against Appellant was overwhelming. He had confessed to the crimes that could have gained him a maximum sentence of life. Appellant and his trial counsel were hoping the trial court would be more lenient than a jury because Appellant was only 17 years old and had no prior record. Appellant's point of error is overruled.

The judgment of the trial court is **affirmed.**